**SO ORDERED.**

**SIGNED this 27 day of July, 2009.**



_____
**ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

DESIGNATED FOR PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **DEBRA ANN WOOD,** | ) | **Case No. 08-12333** |
| | ) | **Chapter 7** |
| Debtor. | ) | |

### MEMORANDUM OPINION

Trustee Carl Davis moves for an examination of transactions between debtor Debra Ann Wood and her counsel as provided by 11 U.S.C. § 329 and Fed. R. Bankr. P. 2017.[1] Debtor appeared in person and by Robert J. Willette, her counsel of record. Also present to testify were Neil Ruther, Esq. and Kara Plunkett, Esq., two attorneys connected with a string of legal service organizations that provide unbundled legal services in connection with debt resolution and

---

[1] Dkt. 19.

bankruptcy. These organizations are Ruther & Associates, L.L.C., Consumer Law Associates, L.L.C. and Persels & Associates, L.L.C., referred to cumulatively herein as the "Ruther Entities." All of the entities save Ruther & Associates were represented at this hearing by W. Thomas Gilman of Wichita. David Eron appeared for the United States Trustee. The parties stipulated to the admission of exhibits A-O and exhibits 1-7.[2]

Jurisdiction

This is a contested matter governed by Fed. R. Bankr. P. 9014 and is a core proceeding under title 11, over which the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and § 1334(b).

Facts

Sometime in late 2006, Debra Ann Wood found herself in difficult financial straits. After seeing a television ad, she found her way to CareOne Credit Counseling, a business that, according to its website, provides debt consolidation services. When she contacted CareOne, a representative referred her to Consumer Law Associates, L.L.C. ("CLA"). CLA, in turn, provided Wood with documents to enable her enrollment in a debt resolution plan (DRP) to be administered by the law

---

[2] Exhibit O was identified as an unexecuted form bankruptcy retainer agreement that CLA would have submitted to Ms. Wood. At the close of evidence, the Court left the record open for Ruther & Associates' counsel to substitute for Exhibit O, a signed retainer agreement by Ms. Wood. *See* Dkt. 34. Respondents were unable to locate and produce a bankruptcy retainer agreement signed by Ms. Wood, due to moving of the office where the originals were maintained. The Court rejects the affidavits submitted in lieu of the signed retainer. *See* Dkt. 35. At trial, Ms. Wood testified that she did not recall signing a retainer agreement to employ Willette as attorney for her bankruptcy case. She only signed the DRP enrollment/retainer agreement evidenced by Ex. 7. The affidavit of Ms. Wood now submitted to supplement the record, after interview and discussion with CLA, contradicts her trial testimony. Similarly, Willette indicated that he did not see or execute a retainer agreement in this case and did not know whether Ruther & Associates had a written fee agreement for Wood's bankruptcy. Despite the inability to produce a retainer agreement executed by Wood, Ruther was adamant that R&A obtains a retainer agreement in 100% of its cases as required by § 528.

-2-

firm of Ruther and Associates, L.L.C. ("R&A"), described in the documents as "a national law firm dedicated to consumer debt reduction."[3] According to Neil Ruther's testimony, R&A and CLA are related entities that are controlled by Ruther, Ruth Feierabend, and Jimmy Persels.[4] Ruther is admitted to practice in Maryland, the District of Columbia, and in the federal courts of the Northern District of Virginia. Feierabend is licensed in Nebraska, Maryland and California. Persels is licensed in Missouri, Illinois and Maryland. None of these attorneys is licensed in Kansas or admitted to practice in the Kansas state or federal courts. While R&A, CLA and P&A all appear to provide legal services and advice (including bankruptcy), CareOne performs non-legal tasks for R&A, including intake of client information and data input into electronic format.[5] According to Ruther, R&A has some 135 staff attorneys and at least one in each of the 50 states.

On November 21, 2006, attorney David Herron wrote a letter to Ms. Wood introducing himself as "the attorney who will help you navigate your way through the Debtor Reduction Program."[6] Although the letter is on R&A letterhead and shows a mailing address in Maryland, Herron purports to be admitted to the bars of Kansas and Missouri. Ms. Wood could contact him by phone, though neither this letter nor anything in the record suggests where his actual physical location is and there is no indication that Wood ever met with Herron in person.

Ms. Wood says that she filled out the papers and eventually received a contract enrolling her

---

[3] Ex. B.

[4] A third related entity, Persels & Associates, L.L.C. ("P&A") was to be the successor to R&A in 2008, when Ruther contemplated retirement.

[5] For ease of reference in this opinion, CLA, R&A, and P&A will be collectively referred to as "R&A" or the "Ruther Entities."

[6] Ex. 5.

-3-

in R&A's DRP program.[7] She signed the contract. According to the agreement, she authorized R&A to debit her checking account $342.90 monthly commencing December 25, 2006; those funds would be collected and placed into R&A's trust account for distribution to her unsecured creditors. From each monthly payment, R&A deducted a $60 service fee that is denoted as a "legal fee" on the monthly plan statements issued to Wood. No money would be distributed to a creditor until that creditor had agreed to a discounted treatment (usually about 8 per cent). Wood believes she made these DRP payments for approximately two years. A small portion of the funds were paid to a creditor, J.C. Penney, the only creditor who agreed to a discounted treatment of its claim. R&A retained the balance, after taking its periodic fees.

The DRP Retainer Agreement between R&A and Wood provided for a 60 month repayment program for which a series of fees were exacted.[8] They included a $100 "Records Fee" for obtaining a credit report and setting up Wood's account, a monthly service or legal fee of $60, an "Early Termination Fee" of the lesser of $150 or 10 per cent of the unpaid service fees, an "Early Settlement Fee" equal to 60 per cent of the unpaid service fees, and a variety of other administrative fees. R&A agreed to solicit each of Wood's creditors and offer them a discounted payout of about 97 per cent of their claims. Wood could rescind the contract at any time and R&A was to return any funds, less the service fees outstanding, that remained in the trust account. R&A sent Wood a statement each month showing the transactions under her DRP account.[9] The last statement sent to Wood by R&A was dated May 12, 2008, showing her last monthly payment on January 25, 2008.

---

[7] Ex. 7.

[8] Ex. B.

[9] Ex. 5.

While paying into the DRP, Wood was sued by some of her creditors. She discontinued payments under her DRP. Upon being sued, she contacted Herron in the spring of 2008, whereupon she was again referred to CLA's offices. Upon calling CLA, she was sent paperwork to complete that would be reviewed to determine if she was a candidate for chapter 7 bankruptcy relief.[10] In March of 2008, CLA advised her that she qualified for chapter 7 relief and that the fee would be approximately $2,000, including the cost of § 109(h) pre-petition consumer credit counseling. Wood testified that she did not have the money to pay the $2,000 fee and was told that the fee would be taken out of her DRP account with R&A. She was eventually credited $1,848 from her DRP account and this amount was retained by R&A as her bankruptcy attorney's fee.[11] R&A charged her an additional $150 closing fee for the DRP and refunded her $1,132 by check from the funds collected under her DRP.

R&A then contracted with Robert Willette, a Kansas lawyer and a member of the federal bar, to file and represent her in the bankruptcy before this Court.[12] For this service, Willette received

---

[10] Ruther testified that this bankruptcy consult is performed by one of three R&A staff attorneys who are experienced in bankruptcy, but there is no indication that the bankruptcy consult was performed by an attorney licensed in Kansas. According to Wood, she completed CLA's bankruptcy questionnaire and paperwork twice. She first completed them in the fall of 2007 but CLA had difficulty locating a Kansas bankruptcy attorney to represent her.

[11] This sum also included the filing fee and the cost of credit counseling obtained by debtor prior to filing.

[12] Willette obtained his law degree in 2001 from the University of Kansas. At the time of his bankruptcy representation of Wood, Willette was employed full-time as an in-house attorney for Ferrell Gas in Overland Park. He maintained a part-time solo law practice out of his Lenexa home, handling bankruptcy referrals from R&A or bankruptcy cases as a contract attorney for R&A, assisting them in filing chapter 7 cases. Prior to this, he was engaged in private practice with the law firm of Macey & Aleman, first in St. Louis and later Kansas City. He practiced in the area of consumer bankruptcy law, solely representing debtors in chapter 7 and 13 bankruptcies in Missouri and Kansas.

-5-

$400, $50 of which he paid to Wichita lawyer David Hiebert for attending the § 341 meeting with debtor. Mr. Willette officed in Johnson County and never personally met Wood until the hearing on this motion. But Willette called and introduced himself to Wood, indicating that he would be representing her in the bankruptcy. He represented to Wood that he was affiliated with R&A and that his fees would be taken care of by R&A.[13]

Willette had no real role in preparing Ms. Wood's bankruptcy filing. Instead, the papers were generated remotely by R&A staff or a non-Kansas attorney with R&A and forwarded electronically to Willette for review.[14] Ruther testified that R&A lawyers and staff, working from locations that are remote from R&A's offices, generate bankruptcy petitions, prepare schedules and other required initial filings, and forward them to local contract counsel. Local counsel, in turn, vet the filings to be certain that all documents are present, appropriate exemptions are elected and that other local bankruptcy filing requirements are met. Plunkett testified that in Wood's case, a Colorado-licensed attorney handled the bankruptcy consultation to determine if Wood qualified for chapter 7. Among Plunkett's duties was the supervision of R&A staff who prepare the bankruptcy petition and schedules and review of them. Plunkett testified that in Wood's case, a paralegal in Dallas prepared her petition, schedules, statement of financial affairs and other bankruptcy forms. Plunkett said that in a typical case, she would review the bankruptcy papers with the client and then forward the prepared petition, schedules, statement of financial affairs, and other required filings to the contract attorney hired to file the bankruptcy case. Ruther likewise testified that neither

---

[13] Willette did not know if any R&A attorneys were licensed to practice law in Kansas.

[14] Kara Plunkett graduated from the University of Miami law school. She became associated with R&A in 2000 or 2001. She offices out of her home in Tennessee and her entire practice is by electronic means.

-6-

Plunkett, nor any other bankruptcy staff attorney with R&A who would have supervised the preparation of the bankruptcy papers were licensed in Kansas. In this case, Willette was to determine Wood's exemptions, verify her filing information, and file the petition. According to Willette and Plunkett, R&A completed the Rule 2016(b) Disclosure statement; it represented that Willette's compensation was $1,998. There was no mention of R&A. Likewise, R&A's response to question 9 on the Statement of Financial Affairs incorrectly indicated that debtor had paid $1,998 to Willette.

Willette testified that he would typically charge a non-CLA/R&A client between $600 and $800 for a consumer bankruptcy filing. That is the only evidence in the record concerning what other lawyers charge for services similar to those the Ruther entities provide.

Willette filed Wood's bankruptcy case on September 15, 2008.[15] As part of his preparations for filing Wood's case, Willette examined her employment status and concluded that with the recent loss of her job, she was eligible to file *in forma pauperis*. He prepared her Official Form 3B, Application for Waiver of Chapter 7 Filing Fee, stating that she had paid him $600 in legal fees, not the $400 fee Willette testified he received from R&A and not the $1,998 referenced on the Rule 2016(b) Disclosure statement he filed. Nevertheless, according to the Rule 2016(b) Disclosure, he or R&A collected $299 for payment of the filing fee even though the Court entered an order granting Ms. Wood's application for waiver of the filing fee. According to Ms. Wood, that money has yet to be refunded to her. This discrepancy drew a motion to reconsider the filing fee waiver from the

---

[15] Prior to filing, Ms. Wood informed Willette that she had been in the DRP with R&A. Ms. Wood paid a total of $4,900 under her DRP and R&A collected some $1,375 in legal fees in connection with the DRP.

-7-

trustee which was granted without objection by Willette.[16]  Ms. Wood indicates that she is in all respects satisfied with the services that R&A and Mr. Willette provided her.  However, she has not received a discharge to date because the filing fee remains unpaid.  Willette no longer practices in Kansas and is presently living and employed in Texas.

Analysis

11 U.S.C. § 329(b) authorizes the court to determine whether a lawyer's compensation in connection with services rendered in a bankruptcy case exceeds the reasonable value of his work and to order a return of any excessive fees.  Fed. R. Bankr. P. 2017(a) implements this section by providing for any party in interest to move for a determination of the propriety of a debtor's attorney fees paid in advance of the case.  Section 329(a) requires debtors' attorneys in bankruptcy cases to file statements concerning the compensation they received during the year before the case filing in connection with or in contemplation of its filing.  Fed. R. Bankr. P. 2016(b) requires every debtor's attorney to disclose within 15 days of the order for relief the statement required by § 329(a).  The attorney is also required to disclose the source of the compensation.  The statement, commonly known to the Court as a Rule 2016(b) Disclosure, must contain a statement of how much the attorney is to be paid, whether any of it is to be shared with another attorney, and the details of any such sharing arrangement.  This statement is to be substantially in the form of Procedural Form B203.  One of the main purposes of § 329(b) is to protect debtors and creditors from overreaching

---

[16] Dkt. 12 filed 10/24/08.  Willette did not object to the trustee's motion on behalf of debtor and the motion to reconsider was granted.  The trustee has not submitted an order granting his motion.

by debtors' attorneys.[17]

Once a question of the reasonableness of counsel's fees is raised by a party in interest bringing a motion, the attorney bears the burden of proving his fee was reasonable.[18] The Court applies the standards set forth in § 330(a)(3) to determine the reasonableness of fees, considering the nature, extent, and value of the services rendered and taking into account all relevant factors, including time spent on the services, rates charged, and customary compensation of comparably skilled attorneys in other cases.[19] Agreed upon compensation of a debtor's attorney may be excessive for a variety of reasons, including the size of the fee, counsel's failure to disclose the compensation as required by § 329(a), or conduct by the attorney that diminishes the value of the legal services.[20] If the Court determines the attorney fees are excessive, it may *cancel* the compensation agreement between the attorney and the client, or it may order the *return* of the excessive portion.[21]

This Court's examination of the transactions between and among Ms. Wood, Mr. Willette,

---

[17] *In re Bartmann,* 320 B.R. 725, 751 (Bankr. N.D. Okla. 2004); *In re Mortakis*, 405 B.R. 293, 297 (Bankr. N.D. Ill. 2009); *Schroeder v. Rouse (In re Redding),* 247 B.R. 474, 478 (8th Cir. BAP 2000).

[18] *In re Mahendra,* 131 F.3d 750, 757 (8th Cir. 1997) (Trustee filed a motion for review of attorney fees and motion for sanctions under Rule 9011.); *Bartmann, supra; Mortakis, supra*.

[19] *In re Davis*, 2006 WL 2404015 at *2 (Bankr. E.D. Okla. 2006) (finding $1,500 (including filing fee) to be reasonable, denying disgorgement, and setting a presumptively reasonable fee of $1,250 in a simple, no asset chapter 7 case); *In re Jones,* 236 B.R. 38, 41 (D. Colo. 1999) (reasonableness of debtor's counsel's fee is determined in the same manner as other fee awards with resort to the *Johnson v. Georgia Highway Exp., Inc.* factors that are relevant in bankruptcy proceedings); *In re Jastrem,* 253 F.3d 438, 443 (9th Cir. 2001).

[20] *In re Merriam,* 250 B.R. 724, 732 (Bankr. D. Colo. 2000); *Bartmann, supra* at 751.

[21] *In re Mortakis,* 405 B.R. at 296-97.

and the various Ruther Entities reveals a plethora of problems. First, the Rule 2016(b) Disclosure filed in this case is materially false in several ways. Second, the fees charged for Ms. Wood's bankruptcy representation in what appears to be a "vanilla" chapter 7 case are excessive. Third, as this Court has subsequently ordered during the pendency of her bankruptcy case, Ms. Wood's filing fee should not have been waived. Finally, several of the attorneys involved in preparing the filings in this case are neither members of the bar of this Court nor licensed in Kansas.

The Rule 2016(b) Disclosure

Fee disclosure under § 329 and the Bankruptcy Rules is mandatory, not permissive.[22] Rule 2016(b) requires disclosure "after any payment or agreement not previously disclosed." Failure to disclose is sanctionable and can include total denial of compensation as well as total disgorgement of fees already paid.[23] As noted in *In re Smitty's Truck Stop, Inc.,* "[D]ebtor's counsel [must] lay bare all its dealings . . . regarding compensation. . . . Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."[24] Too much ferreting has been necessary in this

---

[22] *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556, 1565 (10th Cir. 1993).

[23] *In re Investment Bankers, Inc., supra* (An attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of debtor); *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 849 (10th Cir. BAP 1997) (Omission of retainer from Rule 2016(b) disclosure statement warranted disgorgement of the retainer and denial of all fees, even though retainer payment was identified in the statement of financial affairs); *Mortakis, supra* at 297; *In re Zuniga*, 332 B.R. 760, 773 (Bankr. S.D. Tex. 2005) (Inaccurate and false statements on Rule 2016(b) disclosure statement warrants denial of attorney fees).

[24] 210 B.R. at 848, citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.),* 63 F.3d 877, 881 (9th Cir. 1995) and quoting *In re Saturley,* 131 B.R. 509, 516-17 (Bankr. D. Me. 1991).

case.

This Rule 2016(b) Disclosure, signed by Mr. Willette, but prepared by R&A, is false in three material respects. First, it states that the debtor's $299 filing fee has been paid. This, in fact, is not the case because the debtor applied for, and was granted, a fee waiver under 28 U.S.C. § 1930(f)(1). To date, neither R&A nor Willette has paid the fee, although R&A collected funds from Ms. Wood for that purpose.[25] Nor has the money been refunded to Ms. Wood. Because the fee has not been paid, Ms. Wood has not received a discharge to date. Second, the statement references a fee of $1,998 paid to Mr. Willette. This disclosure is inconsistent with debtor's Official Form 3B, prepared by Mr. Willette. That application for waiver of the filing fee states that debtor has paid a $600 attorney's fee for her bankruptcy. Both the Form 3B and the 2016(b) Disclosure are false because Mr. Willette testified that he received $400 for this case from R&A, and that $1,998 is what R&A received. The Court also notes that in answering question 9 on the Statement of Financial Affairs, the debtor represented that Willette received $1,998 from her. This misstatement further cloaks R&A's role in the bankruptcy filing and misstates the amount Willette received. Third, the statement discloses neither the involvement of R&A, that Willette and R&A were sharing the fee, nor the nature of the fee-sharing arrangement involved.[26]

Mr. Willette testified that he intended to disclose the entire fee for himself and R&A, but that his bankruptcy filing computer software did not permit him to correctly disclose the sharing

---

[25] According to Ms. Wood, the $1,998 for her bankruptcy covered attorney's fees, including Willette's fees, expenses, filing fee, and credit counseling.

[26] *See In re Dennis*, 164 B.R. 318 (Bankr. D. Ariz. 1994) (Fee arrangement cancelled and debtor's attorney ordered to disgorge all fees where attorney failed to adequately disclose fee arrangement and fee-sharing).

-11-

arrangement. Ms. Plunkett testified similarly. The Court is frankly dubious of this statement because the official form provides an alternative disclosure box stating that the debtor's counsel "has agreed to share the above-disclosed compensation" with others and referring to a written agreement explaining the sharing arrangement that is to be attached to the Rule 2016(b) Disclosure. This is dubious at best. Whether or not the software is to blame, counsel is responsible for complying with this fundamental rule of disclosure. It is also telling that neither Willette nor R&A attempted to amend these pleadings notwithstanding that the trustee's motion has been on file since December 11, 2008. Nor did Willette or R&A respond to the trustee's motion to reconsider the waiver of filing fee in which the discrepancy was expressly referenced. Had the trustee not sought the Court's intervention, no one would have ever known about the existence of R&A, whose presence in this case was effectively concealed by counsels' conduct. The Rule 2016(b) Disclosure is simply not accurate or complete, notwithstanding Mr. Willette's certification and it does not comply with § 329(a).

The $1,998 Attorney Fee

In the absence of any records or testimony concerning the staff and attorney time (of both Willette and R&A) incurred in preparing and filing this chapter 7 bankruptcy, the Court cannot determine what an appropriate fee for them might have been.[27] The Court is mindful that this burden rests with counsel, who have fallen far short of demonstrating the reasonableness of their fees.[28]

---

[27] The Court does not consider the "screen shots" offered into evidence by R&A for two reasons. *See* Ex. G, H and I. One, these computer entries appear to relate to Ms. Wood's DRP account, not her bankruptcy case. Two, the exhibits are largely illegible.

[28] *In re Dean*, 401 B.R. 917, 922 (Bankr. D. Idaho 2008) (attorney who failed to verify that debtors' mother's security interest in motor home was properly perfected prior to filing chapter 7 petition would be required to disgorge one-half of his $1,875 fee); *Mahendra,* 131 F.3d

-12-

The Court is further hampered by the failure of R&A and Willette to present a copy of the debtor's retention agreement, a document that counsel is now required by § 528(a) to maintain on file. The specimen agreement provided by R&A at trial states that CLA's typical attorney's fee is $1,399, plus a $300 cost deposit and collection of the $299 filing fee.[29] R&A and Willette both indicated that Willette's share of the fee was $400 for filing Wood's bankruptcy. What did these attorneys' fees buy for Wood? Not much. Assuming she signed a retainer agreement like the specimen, CLA's scope of representation is severely limited. The fees encompass preparation and filing of the petition, schedules, statement of financial affairs and any other required documents to file for chapter 7 bankruptcy, communication with creditors, and attendance at the § 341 meeting of creditors. The retainer does not include numerous post-petition services and does not contemplate court or hearing appearances (other than the § 341 meeting). The attorneys' fees do not include representation of the debtor in nondischargeability complaints, adversary proceedings, 'voiding of liens,' motions to lift the automatic stay, Rule 2004 examinations, reaffirmations, re-scheduled § 341 meetings, or audits of the bankruptcy case under 28 U.S.C. § 586(f). Based upon the scant record before the Court, the services provided by R&A are similar in many respects to those of a bankruptcy petition preparer. No evidence was presented of communications or negotiations by R&A with Wood's creditors after the filing of her petition. R&A did not appear with debtor for her § 341 meeting.

As for Mr. Willette's $400 fee and services, he prepared the application for waiver of the

---

757 (Bankruptcy court allowed attorney $1,000 as reasonable fee in chapter 7 case that lacked complexity.).

[29] Ex. O.

filing fee, which as this Court has previously pointed out, contains many errors.[30] He also reviewed Ms. Wood's exemptions. He did not attend the § 341 meeting of creditors, but outsourced that service to a local bankruptcy attorney to cover. The Court doubts that Mr. Willette carefully reviewed the bankruptcy petition, schedules, Statement of Financial Affairs, and other initial documents prepared by R&A that he filed. Had he done so, he would have readily discovered the errors and discrepancies in the Statement of Financial Affairs and Rule 2016 disclosure. The Court also notes that in Willette's Rule 2016 disclosure statement, he agreed to provide representation to debtor in negotiating with secured creditors, assist with reaffirmation agreements, and filing lien avoidances on household goods.[31] However, debtor's Schedule D reveals that she had no secured debt and her Statement of Intention reveals that she had no secured debt or property to be surrendered, redeemed or reaffirmed.

No one provided the Court any record concerning how R&A's fee structure stacks up against that of other debtors' counsel in the Wichita market. That said, the Court sees nothing special about the benefits conferred on Ms. Wood for having selected R&A and Mr. Willette as compared to the quality of service she might have received from any other competent lawyer active in this market. Indeed, it seems that several key areas of confusion arose from the proliferation of lawyers preparing what appears to have been a very simple, no-asset case.[32] The diffusion of attorney responsibility,

---

[30] The Court did not have the benefit of Mr. Willette's time records to discern what activities or tasks he performed.

[31] This is yet another inconsistency. As noted above, R&A disavows any responsibility for these tasks.

[32] *In re Jastrem*, 253 F.3d 438, 443 (9th Cir. 2001) (Debtor's counsel's fees reduced from $1,000 to $750 in a "simple and straightforward" chapter 7 and where American Law Center's minimal work did not involve any factual or legal complexity).

-14-

which extended to lawyers unlicensed in this state and not admitted to practice in this Court, increased the cost and obfuscated the preparation and administration of this case rather than making it more efficient. The Court also notes Mr. Willette's testimony that, in cases he filed on his own without a R&A referral, he charges between $600 and $800 plus filing fees, considerably less than R&A's fees here.

The fee charged in this case is excessive in light of the services to be rendered, the absence of attorney time records showing the time spent on various tasks, the simple and straightforward nature of debtor's no-asset chapter 7 case, and inconsistent and sloppy work done by the lawyers, especially in connection with the filing fee waiver and the Rule 2016(b) Disclosure. This resulted in considerable time and effort being expended by the case trustee, the United States Trustee, and the Court. Debtor's counsel should not be rewarded with generous fees when poor quality work and inaccurate statements hamper rather than facilitate the administration of a case. Indeed, Ms. Wood's discharge has been unreasonably and unnecessarily delayed by the unpaid filing fee in this case. While Ms. Wood has no complaints about Mr. Willette's services, she is not well-versed on what a reasonable fee for handling a routine chapter 7 bankruptcy should run nor the services or representation that should be expected of an attorney in such a case.

The Filing Fee Waiver

The Court is especially troubled by counsels' effort to secure a filing fee waiver in this case while collecting that fee from the debtor's funds and claiming an excessive attorneys' fee in this matter. The Court is well-aware that after the 2005 bankruptcy amendments, filing fee waivers and installment payments are no longer conditioned on debtor proceeding *pro se* in her bankruptcy

case.[33] The Court also understands that under § 1930(f)(1) it *may* in appropriate circumstances waive a debtor's fee if it determines that the debtor has income less than 150 per cent of the poverty line *and* is unable to pay the fee in installments.

Filing fees support the bankruptcy system in a number of ways including assuring that trustees receive some compensation for their work in even the smallest no asset cases. Filing fees should not be routinely waived. Their waiver must be predicated on an accurate showing of the factors set out in § 1930(f)(1). This requires accurate and truthful disclosures on Form 3B.

On its face, debtor's Form 3B is highly persuasive on both points. Clearly, debtor's income is below the poverty line and her *reported* assets and expenses suggest that she may well be unable to pay the filing fee. Unfortunately, what was reported is simply false. Ms. Wood stated that she had paid her attorney $600 when, in fact, she had authorized R&A to retain $1,998 in attorneys' fees and expenses from her DRP. This figure included her filing fee. In addition, R&A repaid or refunded her an additional $1,100 that they had collected while administering her DRP. In short, the record as the Court now understands it does not support a finding that Ms. Wood was unable to pay her filing fee and the same should be paid forthwith as set out below.

Unauthorized Practice of Law

With respect to the Ruther Entities, this Court has further concerns about unauthorized practice. It is a violation of Rule 5.5(a) of the Kansas Rules of Professional Conduct to practice law in this state without a Kansas license. As to Willette, it is also a violation of Rule 5.5(b) to assist

---

[33] *See* 28 U.S.C. § 1930(f) and Fed. R. Bankr. P. 1006(b) and (c), Advisory Committee Notes, 2008 Amendments.

persons who are engaged in the unauthorized practice of law.[34] It does not appear that R&A's conduct in assisting Ms. Wood with her DRP with the assistance of a Kansas lawyer constitutes the unauthorized practice of law, though it may violate other Kansas law.[35] Nor does it appear that Mr. Willette's filing of Ms. Wood's bankruptcy petition constituted unauthorized practice. What is less clear is whether the "out-sourcing" of preparation of bankruptcy filings to non-lawyers or lawyers not licensed in this state constitutes unauthorized practice.[36] If a Kansas-licensed lawyer such as Willette supervises this activity and retains responsibility for the work, that delegation of work is not necessarily prohibited.[37] Here, Willette bears ultimate responsibility for R&A's work product, especially because he represented that it was his own. To the extent that Willette's supervision was inadequate, the staff of R&A engaged in the unauthorized practice of law and Willette assisted it.[38]

---

[34] 2008 KAN. CT. R. ANNOT. 391, Kan. S. Ct. Rule 226, Kansas Rules of Professional Conduct (hereafter "KRPC Rule ___").

[35] *See* KRPC Rule 5.7. *See also* K.S.A. § 50-1118 which mandates that credit service organizations be licensed and registered with the Kansas State Bank Commissioner. Ex 6 is a list of registered organizations as of April 3, 2009. On that date, CareOne was a duly registered organization, but R&A, P&A, and CLA were not.

[36] *In re Grimes*, 115 B.R. 639, 643 (Bankr. D. S.D. 1990) (solicitation of financial information and preparation of schedules is rendering legal advice, whether provided by lay persons or lawyers); *O'Connell v. David*, 35 B.R. 141, 143 (Bankr. E.D. Pa. 1983) *modified* 35 B.R. 146 (E.D. Pa. 1983) *aff'd,* 740 F.2d 958 (3rd Cir. 1984) (actual preparation and direct or indirect filing for the debtor of chapter 7 petition and schedules constitutes the unauthorized practice of law); *In re Herren*, 138 B.R. 989, 994 (Bankr. D. Wyo. 1992) (The solicitation of financial information and preparation of bankruptcy schedules is rendering legal advice whether provided by lay persons or lawyers; entity that provided copies of official forms to debtor, provided directions to complete the forms, and summarized and reformulated information solicited from debtor, was engaged in the unauthorized practice of law).

[37] *See* Rule 5.5, Comment; *In re Wilkinson*, 251 Kan. 546, 834 P. 2d 1356 (1992) (suspended attorney as law clerk; Rule 5.5 does not prohibit use of paraprofessionals so long as attorney supervises and retains responsibility).

[38] *See In re Juhnke*, 273 Kan. 162, 41 P.3d 855 (2002); Rule 5.5(b) and Rule 5.3.

Especially troubling is the provision of "help-line" services by the Ruther Entities for Kansas bankruptcy clients to call and receive advice concerning their Kansas bankruptcy cases from either non-lawyers or non-Kansas lawyers.[39] It is hard to see how this is not the practice of law. If the lawyers answering the help line are not Kansas-licensed or admitted in this District, they engage in unauthorized practice of law. Therefore, Willette's association with R&A in filing the bankruptcy case prepared by R&A violated Rule 5.5(b)'s prohibition of assisting others in the unauthorized practice of law.[40]

One bankruptcy court has expressed concerns about the unauthorized practice of law and ordered the offending attorney to disgorge the *entire* bankruptcy fee under § 329(b). In *In re Johnson,* the bankruptcy court for the District of South Dakota concluded that an attorney should be ordered to disgorge the bankruptcy fees he received (even if those fees are reasonable), where the attorney was not admitted to the federal bar at the time the services were rendered and the attorney "ghosted" his legal services by having another attorney sign the necessary documents and file the bankruptcy for him.[41] This is in large part what transpired in the case at bar. R&A performed the bankruptcy consultation and intake, and prepared nearly all of the bankruptcy schedules and documents and sent them to Willette, the Kansas-licensed lawyer who signed the papers and filed the case after conducting what appears to the Court to be a perfunctory review of the papers. The South Dakota bankruptcy court also noted in *Johnson* that § 329(b) does not require

---

[39] *See In re Flack*, 272 Kan. 465, 33 P.3d 1281 (2001).

[40] *Id.* (Attorney's association with company whose client services representatives provided estate planning services, including counseling and advising clients, violated rule prohibiting lawyer from assisting others in the unauthorized practice of law).

[41] *See In re Johnson*, Unpublished Op., 2006 WL 3242692 at *11 (Bankr. D. S.D. Nov. 7, 2006).

a showing of harm to the debtor or the estate.[42]  Thus, notwithstanding the fact that debtor benefitted from his bankruptcy case by discharging $25,000 of unsecured debt and that the $700 attorney's fee paid by debtor was not excessive, the *Johnson* court would not condone the unauthorized practice of law and circumvention of the requirements of § 329(b) and Rule 2016(b) and Rule 9011.[43]

Conclusion

Counsels' numerous omissions and misrepresentations in the Rule 2016(b) Disclosure, the Statement of Financial Affairs, and the filing fee waiver application cannot be ignored.  Neither can this Court look past the fact that Willette abetted R&A's unauthorized practice.  Finally, even had Willette and R&A conducted themselves professionally here, their services are simply not worth $1,998 for a simple, no-asset chapter 7 bankruptcy, especially where they severely limit the scope of their representation and effectively act as bankruptcy petition preparers.  The Court finds, based upon the record before it, that R&A and Willette have failed to establish the reasonableness of their fees, and concludes that the attorneys fees charged and collected in this case are excessive and unwarranted.  Moreover, the Court takes a very dim view of the pervasive unauthorized practice that has occurred here because it violates Kansas law and the rules of this Court and because it has significantly increased the cost of administering this simple case.

Accordingly, the attorney fees in this case are DENIED and Robert J. Willette and R&A (collectively Ruther and Associates, L.L.C., Consumer Law Associates, L.L.C., and Persels &

---

[42] *Id.*

[43] *See also In re Babies*, 315 B.R. 785 (Bankr. N.D. Ga. 2004); *In re Zuniga,* 332 B.R. 760 (Bankr. S.D. Tex. 2005).

-19-

Associates, L.L.C.) are ORDERED to disgorge the fees in their entirety.[44] Willette is to repay the estate $400, or whatever fees he received for this bankruptcy, whether from the debtor or from R&A. R&A shall disgorge the balance of the fees it charged Ms. Wood -- $1,299, and remit this sum to the estate.[45] R&A and Willette shall be jointly and severally liable to pay the $299 filing fee owed by Ms. Wood in this case and previously collected by R&A or Willette from Ms. Wood's DRA account. R&A and Willette shall have seven (7) days from the entry of this Order to remit the filing fee to the Clerk of the Bankruptcy Court and to remit the disgorged fees to the estate, in care of the trustee Carl Davis, for administration.

# # #

---

[44] *See In re Investment Bankers, Inc.,* 4 F.3d at 1565 (An attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of debtor)*; In re Smitty's Truck Stop, Inc.,* 210 B.R. at 849 (Omission of retainer from Rule 2016(b) disclosure statement warranted disgorgement of the retainer and by itself was a sufficient basis to deny all fees, even if the omission was an oversight or inadvertent); *Mortakis,* 405 B.R. at 297; *Zuniga,* 332 B.R. at 773 (Inaccurate and false statements on Rule 2016(b) disclosure warrants denial of attorney fees).

[45] Of the $1,998 total fee, $299 was designated for the filing fee and $400 was to be paid to Willette, thus leaving the remaining amount of $1,299.